UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MONICA S. RAMSEY AND ROGER DALE RAMSEY | No. 2:23-cv-00632 |
| *Plaintiffs* | |
| v. | Judge Ivan L. R. Lemelle |
| INDEPENDENT SPECIALTY INSURANCE COMPANY AND SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. | Magistrate Judge Donna Phillips Currault |
| *Defendants* | |

**REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
AND TO STAY OR, ALTERNATIVELY, DISMISS THE PROCEEDINGS**

Defendants Independent Specialty Insurance Company ("ISIC") and Sedgwick Claims Management Services, Inc ("Sedgwick") (collectively, "Defendants") submit this Reply in Support of their Motion to Compel Arbitration and to Stay or, Alternatively, Dismiss the Proceedings, under the Federal Arbitration Act, showing as follows:

**I.   INTRODUCTION**

Plaintiffs Monica and Roger Ramsey own a commercial property in New Orleans, Louisiana. They sought coverage for the property from ISIC, a surplus lines insurer. ISIC offered to property coverage for the property, subject to certain terms, conditions, and provisions. The Ramseys accepted those terms by signing the insurance quote, and ISIC issued a policy to them.

The Ramseys claim that ISIC breached the surplus lines policy and Louisiana law by failing to pay for damage related to Hurricane Ida. ISIC disagrees. This is a dispute the parties agreed to arbitrate. But now, the Ramseys seek to avoid this part of the policy by arguing that La. R.S. § 22:868 bars the arbitration agreement. Section D of that statute, however, specifically allows

1

surplus lines insurers, like ISIC, to include a chosen forum for resolving disputes in their policies. For this reason, La. R.S. § 22:868 does not void the arbitration provision in the policy, and the Parties should resolve this dispute in the chosen arbitral forum.

## II.   SURPLUS LINES INSURERS ARE PERMITTED FLEXIBILITY TO INSURE UNIQUE RISKS

It is undisputed that ISIC is a surplus lines insurer. *See* La. Dep't. of Ins., Approved Unauthorized Insurer List -- Surplus Lines, https://www.ldi.la.gov/onlineservices/WhiteList/ (last accessed June 5, 2023) (reflecting ISIC's classification as Surplus Lines insurer). This is important. As explained by the Insurance Department, surplus lines carriers insure "unique, large or high risks." *See* La. Dep't. of Ins. Surplus Lines Brochure, a true and correct copy attached as Exhibit A. To do so, they "have more freedom and flexibility for accepting risks and designing and pricing their policies." *Id*. In particular, they are exempted from the Department's "rate and policy review," which allows them the "flexibility needed to provide a market" for these unique risks. *Id*.; *See* La. R.S. § 22:446 ("The commissioner shall not require surplus lines insurers to file or seek approval of their forms and rates for property and casualty insurance except as provided in R.S. § 22:1456(B)(2) relative to public carrier vehicles."). This flexibility is especially important given the current insurance crisis in Louisiana. *See* La. Dep't of Ins., Press Conference to Preview the La. Dep't. of Ins. 2023 Legislative Package, https://www.ldi.la.gov/news/press-releases/4-3-23-press-conference-on-ldi-2023-legislative-package (last visited June 6, 2023).  It also includes the right to select a forum for resolving disputes. La. R.S. § 22:868(D).

Here, the Ramseys took advantage of this flexible market by seeking coverage from ISIC, a surplus lines insurer. [Underwriting Documents, Doc. 9-2]. To avoid any confusion, both the Quote and Policy issued to the Ramseys clarify that the Policy is "delivered as a surplus line coverage under the Insurance Code." [Application and Quote, Doc. 9-2 at 12; Policy, Doc. 9-3 at

2

1].[1] Even so and despite seeking coverage in this more flexible market, it now seeks to avoid the terms it agreed to and the risk it took by participating in this market.

### III. LA. R.S. § 22:868 PERMITS THE PARTIES TO CHOOSE AN ARBITRAL FORUM

Louisiana allows surplus lines insurers the flexibility to choose the forum for resolving disputes. La. R.S. § 22:868 provides the following:

> A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:
>
> * * *
>
> (2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.
>
> * * *
>
> D. The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

La. R.S. § 22:868.

This includes the right to include a provision allowing disputes to be resolved in an arbitral forum. In particular, both Louisiana and federal courts have explained that arbitration agreements, like the Agreement here, are a "kind of forum-selection clause." *Stadtlander v. Ryan's Family Steakhouses,* Inc., 794 So.2d 881, 890-91 (La. App. 2d Cir. 4/04/2001) (internal citations omitted);

---

[1] In a footnote, the Ramseys argue that the Policy was not "properly authenticated and/or proven to be a surplus lines policy," because the broker's signature line on the copy of the declarations page attached to ISIC's motion is blank. [Doc. 11, n.1]. This is a red herring. The absence of a signature of a surplus line broker does not impact ISIC's status as a surplus line insurer, which is applied for and approved by the Department of Insurance.

*Scherk v. Alberto-Culver Co.,* 94 S.Ct. 2449, 2457 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of the suit but also the procedure to be used in resolving the dispute."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 105 S.Ct. 3346, 3356 (1985); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 109 S.Ct. 1917 (1989). In fact, the importance of enforcing these specific type of forum selection clauses was emphasized by the United States Supreme Court in *Scherk,* 94 S.Ct. 2449 (1974). There, one of the parties to an arbitration agreement argued that the provision was not enforceable under the Securities Act. In rejecting this argument, the Court explained that the "invalidation of such an agreement . . . would not only allow the respondent to repudiate its solemn promise but would, as well, reflect a 'parochial concept that all disputes must be resolved under our laws and in our courts.'" *Id.* at 2457. More specifically, it noted the importance of contractual agreements to resolve disputes in an arbitral forum, explaining that "the elimination of all such uncertainties by agreeing in advance on a *forum* acceptable to both parties is an indispensable element in international trade, commerce, and contracting." *Id.* (emphasis added). In so holding, the court applied the rule from its prior decision in *Breman v. Zapata Off-Shore Co.,* 92 S.Ct. 1907 (1972), which enforced a non-arbitration forum selection clause.

So too here, the parties agreed to resolve their disputes in an arbitral forum. This contractual forum selection is permitted by La. R.S. § 22:868(D) because ISIC is a surplus lines insurer. Thus, when the "case involves surplus lines insurance, the statutory prohibition against arbitration does not apply." *Parish of St. Charles v. HDI Global Specialty,* No. 22-3403, 2023 WL 1419937, at *5 (E.D. La., Jan. 31. 2023); *Certain Underwriters at Lloyd's London v. Belmont Commons, LLC,* No. 2:22-cv-3874, 2023 WL 105337 (E.D. La., Jan. 4, 2023).

IV. **THE RAMSEYS' ATTEMPTS TO ARGUE THAT THE SELECTION OF AN ARBITRAL FORUM IS NOT A FORUM SELECTION CLAUSE IS NOT SUPPORTED BY PRECEDENT OR THE LANGUAGE AND LEGISLATIVE HISTORY OF LA. R.S. § 22:868(D)**

A. **All Forum Selection Clauses, Including Arbitration Provisions, Affect the Court's Ability to Hear and Decide a Dispute**

The Ramseys try to distinguish arbitration provisions from other forum selection clauses by arguing that arbitration provisions somehow affect a Louisiana Court's ability to hear and determine an action more significantly. But, as both federal and Louisiana precedent show, all forum selection clauses —whether selecting the Southern District of New York, the Court of Common Pleas in London, or arbitration as the forum for resolution —affect the Court's ability to hear and determine an action. Put differently, in both application and as construed by Louisiana and federal courts, arbitration clauses function as a type of forum selection clause.

In Louisiana, jurisdiction is the "legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." La. C.C.P. art. 1; *Creekstone Juban I, LLC v. XL Ins. Am.,* 282 So.3d 1042, 1047 (La. 2019). Historically, jurisdiction limited the enforceability of forum selection clauses in both federal and Louisiana courts. In particular, courts believed these clauses "oust[ed] the jurisdiction of the court." *Shelter Mut. Ins. Co. v. Rimkus Consulting Group, Inc.,* 148 So.3d 871 (La. 2014) (citing *Breman,* 92 S.Ct. 1907 (1972); *Macaluso v. Watson,* 171 So.2d 755 (La. App. 4th 2/16/1965). In 2014, however, the Louisiana Supreme Court changed course, finding that "forum selection clauses [are] *prima facie* valid and generally enforceable." *Shelter Mut. Ins. Co.,* 148 So.3d 871 at 882. In so holding, the Court adopted the United States Supreme Court's ruling in *Breman,* explaining that the "right of parties to freely contract must encompass the correlative power to agree to bring suit under that contract in a particular forum." *Id.* The Court similarly

5

adopted *Breman's* reasoning that the "argument that such clauses are improper because they tend to 'oust' a court of jurisdiction is hardly more than a vestigial legal fiction." *Breman,* 92 S.Ct. at 1914. As the Supreme Court explained:

> No one seriously contends in this case that the forum selection clause 'ousted' the District Court of jurisdiction over [the] action. The threshold question is whether that court should have exercised its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause.

*Id.* **This is the exact reasoning the Supreme Court relied on in *Scherk* and *Mitsubishi Motors* to enforce arbitration provisions, despite jurisdictional challenges.** *Scherk,* 94 S.Ct. 2449; *Mitsubishi Motors Corp.,* 105 S.Ct. 3346.

Since 2014, the Louisiana Supreme Court has continued to move away from the legal fiction that forum selection clauses oust a court of jurisdiction. *Creekstone Juban I, LLC v. XL Ins. Am.,* 282 So.3d 1042, 1047 (La. 2019). For instance, in *Creekstone Juban*, the Court explained that "jurisdiction and venue are distinct legal concepts." *Id*. In particular, "if jurisdictional requirements are met, courts throughout the state have the legal power and authority to hear the case; however, not all courts with jurisdiction are in the proper venue." *Creekstone Juban,* 282 So.3d at 1047. For this reason, "where the parties have contracted for a particular forum or venue for litigating disputes, this does not mean that they have deprived the courts of this state of the legal authority to hear the dispute." *Id.*

That is exactly the case here. The Parties chose to resolve their dispute in an arbitral forum. The Ramseys ignored this and filed suit. ISIC is asking the Court to exercise its jurisdiction to enforce the parties' contractual agreement to resolve disputes through arbitration, which is a condition of coverage. In response, Ramseys ask the Court to find the arbitration provision unenforceable. In deciding these issues, this Court will determine "the legal relations of the

6

parties" and will "grant relief" to the parties –either by enforcing or refusing to enforce the arbitration provision. No matter how the Court rules, it retains jurisdiction. If the Court determines the arbitration provision is unenforceable, this Court retains jurisdiction to decide this case. And, conversely, if it compels arbitration, this Court retains jurisdiction to decide if the ultimate award is enforceable under the FAA and Louisiana law. The arbitration provision does not divest this Court of jurisdiction; but rather, like every forum selection clause, it requires the Court to transfer the case to another forum.[2]

In both application and as construed by the Supreme Court, arbitration clauses are considered a subset of forum selection clauses. There is no articulated (or reasonable) way to distinguish them here.

### B.     The Legislative History and Text of La. R.S. 22:868(A) Support this Construction

As discussed above, the legislature has continued to understand the need for surplus lines insurers to have flexibility to serve their unique markets. This desire is reflected in Section (D) of La. R.S. § 22:868, which was added to the statute in 2020. It specifically permits surplus lines insurers to select the forum for resolving disputes.

Without support, the Ramseys argue that the 2020 amendments were intended to overrule *Creekstone*. There is no basis for this assumption in either the legislative history or the text of the statute. In fact, the only thing clear from the legislative history of the amendments is that the

---

[2] ISIC is aware of Justice Weimer's concurring opinion in *Creekstone Juban,* 282 So.3d 1042. As a concurring opinion, it does not have precedential value. But, even if it did, the opinion does not explain how arbitration provisions differ from forum selection clauses. It also claims, without support, that other, non-arbitration forum selection clauses have less of an impact on a Louisiana Court's jurisdiction. That does not make sense. Here, the Court can decide whether arbitration is appropriate and has jurisdiction if the case remains. This would be the exact same authority it would have when deciding whether a New York forum is appropriate.

legislators wanted to maintain the flexibility of the surplus lines market. In particular, Senator Luneau introduced a bill that was intended to prevent insurance companies from "venue shopping" within the state. Specifically, Senator Luneau did not want insurance companies to "select a venue, maybe East Baton Rouge Parish . . . or Orleans Parish" and require individuals from other parts of the state to "go there." La. State Senate Committee Hearings, available at https://senate.la.gov/s_video/videoarchive.asp?v=senate/2020/05/051320INS_0 (last visited April 4, 2023) (discussion begins at 1:15).  To this end, he proposed adding "venue" to Section A of La. R.S. § 22:868. He was unaware of the *Creekstone* decision.[3] While the bill was being discussed, legislators were concerned about how the statute generally impacted premiums in the state. In particular, two legislators did not want to prevent businesses from agreeing to a specific forum for dispute resolution, in exchange for a reduction in premium. *Id*. Senator Luneau agreed to amend the statute to allow this flexibility. *Id*.

       This discussion ultimately led to the current version of La. R.S. § 22:868. As requested by Senator Luneau, the legislature amended Section A to prohibit venue selection provisions in insurance policies. It did not add anything to specifically prohibit forum selection clauses. This is true even though the statute distinguishes between forum and venue selection clauses. Even more, presumably as part of a compromise, Section D was added to the statute. By its terms, it allows surplus lines insurers to select the forum and venue for dispute resolution. It does not include any limitation on the forum a surplus lines insurer may select. In other words, there is nothing in Section D indicating that a surplus line insurer is prohibited from selecting an arbitral forum.

---

[3] This part of the legislative history is unclear. Senator Luneau seemed to presume that all forum selection clauses were prohibited because they affect a Court's jurisdiction.

V. **ENFORCING THE ARBITRATION PROVISION DOES NOT VIOLATE CONSTITUTIONAL RIGHTS**

In a final effort to avoid their agreement, the Ramseys argue that they "never waived their right of access to the courts as guaranteed by the Louisiana Constitution" because the policy attached to ISIC's Motion to Compel was not signed. [Doc. 11, 7-9]. This ignores the fact that ISIC only offered to insure the Ramseys under the terms and conditions outlined in the Policy. [Underwriting Documents, Doc. No. 9-2]. The forms including these terms and conditions, including the form with the arbitration provision, were identified in the quote issued to the Ramseys and incorporated by reference. *Id*. at 12. The Ramseys accepted the quote and the Policy was issued. *Id*. at 26. In fact, the Ramseys do not dispute that the Policy is valid, specifically alleging that "[a]t all times material hereto, the Policy was in full force and effect". [Doc. 1, ¶¶6-7]; *See Bellsouth Advertising & Pub. Corp. v. Gassenberger*, 565 So. 2d 1093, 1095 (La. App. 4th Cir. 1990) (estopping party from raising defense, explaining the doctrine of equitable estoppel "is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence" (*quoting American Bank & Trust Co. v. Trinity Universal Ins. Co.*, 251 La. 445 (1967)). Rather, they seek to pick what portions of the Policy are enforceable.

More generally, the Ramseys' constitutional arguments are especially weak given the purpose of the FAA, which was intended to abrogate judicial hostility towards arbitration provisions. In particular, the FAA is clear that "any doubts concerning the scope of arbitration should be resolved in favor of arbitration, whether the issue at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Stadtlander*, 794 So.2d at 888 (citing *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 103 S.Ct. 927, 941 (1983)). So too here, all doubts concerning the scope of arbitration should be resolved in favor of enforcing the provision.

9

**VI.    CONCLUSION**

Plaintiffs seek coverage under an insurance policy that includes an enforceable arbitration provision that is permitted under La. R.S. § 22:868. Because the arbitration is enforceable under the Federal Arbitration Act, Defendants respectfully request that the Court compel Ramsey to arbitrate their claims and stay, or alternatively, dismiss this litigation.

Respectfully submitted,

**WOOD, SMITH, HENNING & BERMAN LLP**

*/s/ Lori D. Barker*
Lori D. Barker (La. Bar No. 31687)
John M. Falgout (La. Bar No. 39177)
1100 Poydras Street, Suite 2900
New Orleans, Louisiana 70163
Phone: (504) 386-9840
Fax:     (504) 386-9841
Email:   LBarker@wshblaw.com
             JFalgout@wshblaw.com

*Counsel for Defendants, Independent Specialty Insurance Company and Sedgwick Claims Management Services, Inc.*