UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MONICA S. RAMSEY AND**  **CIVIL ACTION**
**ROGER DALE RAMSEY**

**VERSUS**  **NO. 23-0632**

**INDEPENDENT SPECIALTY INSURANCE**  **SECTION "B"(2)**
**COMPANY AND SEDGWICK CLAIMS**
**MANAGEMENT SERVICES, INC.**

## ORDER AND REASONS

Before the Court are defendants' motion to compel arbitration (Rec. Doc. 9), plaintiffs' opposition (Rec. Doc. 11), and defendants' reply (Rec. Doc. 15). For the following reasons,

**IT IS HEREBY ORDERED** that the motion to compel arbitration (Rec. Doc. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **STAYED pursuant to 9 U.S.C. § 3, and, for statistical purposes only, and ADMINISTRATIVELY CLOSED** without prejudice to the parties' rights to reopen the case after the conclusion of the arbitration proceedings.

**IT IS FURTHER ORDERED** that **no later than thirty (30) days after the conclusion of the arbitration proceedings**, parties shall file either a motion to reopen this case and a motion to opt out of the streamlined settlement program, or a joint motion to voluntary dismiss all claims against defendants. **FAILURE TO TIMELY COMPLY WITH THIS ORDER MAY LEAD TO SANCTIONS, INCLUDING**

**DISMISSAL OF PETITION OR DEFENSES, WITHOUT FURTHER NOTICE.** *See* FED. R. CIV. P. 41(b).

## I.   FACTS AND PROCEDURAL HISTORY

Independent Specialty Insurance Company ("ISIC") is an insurance company domiciled in Delaware with its principal place of business in Texas. Rec. Doc. 1 at 1. ISIC previously issued a commercial insurance policy for the Monica S. Ramsey and Roger Dale Ramsey's (the "Ramseys") properties located at 3620 Canal Street, New Orleans, Louisiana 70119 and 124 S. Telemachus Street, New Orleans, LA 70119. *See id.* On February 8, 2021, the Ramseys applied to renew their insurance on the properties with ISIC, which, after receiving a renewed offer subject to certain terms and conditions, including an arbitration clause, was agreed to and signed by the Ramseys that same day. Rec. Doc. 9-1 at 2. The Ramseys' renewed policy was delivered as "surplus lines coverage under the Insurance Code of the State of Louisiana," and covered the one-year period of February 10, 2021 to February 10, 2022, bearing policy number 2021-800053-01. Rec. Doc. 1 at 2; Rec. Doc. 9-1 at 2.

On August 29, 2021, Hurricane Ida hit New Orleans, Louisiana. *See* Rec. Doc. 1 at 3. The Ramseys claim that the storm damaged the properties, resulting in "severe roof and exterior damage, interior water damage and resultant mold

damage, tree damage, contents damage, as well as, business income losses." *See id.* at 1-3.

In the wake of Hurricane Ida, the Ramseys registered their insurance claims with ISIC through its delegated third party claims management administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick").[1] *Id.* at 3. Then on or around September 7, 2021, defendants' field adjustor, Larry Shoffner, inspected the interior and exterior of the properties, however, he could not access the roof. Rec. Doc. 1 at 1. This led to ISIC hiring an engineer, Envista Forensics, to inspect the tree damage to the roof. *Id.* On or around October 4, 2021, Envista Forensics inspected the roof, along with the exterior and interior of the properties during a room-by-room inspection. *Id.* at 4. Ms. Ramsey and her legal counsel accompanied Envista Forensics. *Id.*

Then on January 29, 2022, the Ramseys provided defendants with a Microbial Assessment Report prepared by Driskill Environmental Consultants, LLC regrading rainwater intrusion and toxic mold damage to the properties resulting from the ten-day loss of power following Hurricane Ida. *Id.* at 6. On March 3, 2022, the Ramseys provided defendants with a report from CMR Construction & Roofing, Inc. ("CMR") which contained a detailed

---

[1] The Ramseys' claim number is SDA21012460 (the "Claim"). Rec. Doc. 1 at 3.

damage assessment and estimate for replacement. *Id.* That same day the Ramseys "also provided a detailed estimate of damages to the properties using Exactimate by a damage expert including several hundred colored photographs documenting the structure and roof damage." *Id.* at 7.

Then a reinspection of the properties was performed on March 7, 2022, with defendants' engineer, a new adjuster, the Ramseys' water damage and mold expert, a construction damage expert, Ms. Ramsey, and her legal counsel. *Id.* On April 9, 2022, defendants tendered payment to the Ramseys. *Id.* Then ten days later, the Ramseys provided defendants with documentation of their business income losses due to Hurricane Ida from August through September of 2021. *Id.* Finally, in July 2022, the Ramseys "provided an estimate for toxic mold remediation costs in excess of $40,000 from Certified Cleaning and Restoration DKI relating to the written toxic mold remediation protocol established by the report provided by Driskill Environmental Consultants." *Id.*

On February 17, 2023, the Ramseys filed suit against ISIC and Sedgwick (collectively "defendants"), seeking "payment of all covered damage amounts under the terms of the policy and statutory penalties, damages, and attorneys' fees pursuant to La. Rev. Stat. 22:1973 and La. Rev. Stat. 22:1892, *et seq.*" See *id.* at 8. Defendants then filed the instant motion to compel

4

arbitration and stay or, alternatively, dismiss the proceedings on May 16, 2023. *See* Rec. Doc. 9. Plaintiffs' opposition was filed on May 30, 2023 (Rec. Doc. 11), and defendants replied on June 8, 2023 (Rec. Doc. 15).

## II. LAW AND ANALYSIS

### A. Motion to Compel Arbitration Standard of Review

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes a "liberal policy favoring arbitration" and a "strong federal policy in favor of enforcing arbitration agreements." *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prod. Co., Inc.*, 243 F.3d 906, 909 (5th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Arbitration is a matter of contract, and as such, the court may only compel a party to arbitrate their claims where that party has expressly agreed to arbitration. *See AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). The Fifth Circuit provides a two-step test for determining whether a district court should compel arbitration, "[t]he first step is to determine whether the parties agreed to arbitrate the despite in question," which "involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996)

5

(citations omitted). "The second step is to determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* (citation and internal quotations omitted).

Considering the policy favoring arbitration, the court generally "resolve[s] doubts concerning the scope of coverage of an arbitration clause in favor of arbitration." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (citation and internal quotations omitted). Therefore, "a valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue. *Id*. (citation and internal quotations omitted) (emphasis in original).

The 1945 McCarran-Ferguson Act ("MFA"), 15 U.S.C. §§ 1011-1015, provides that "any state law enacted for the purpose of regulating insurance will trump, or 'reverse preempt,' any contrary federal law that does not relate specifically to insurance." *Courville v. Allied Pros. Ins. Co.*, 2013-0976 (La. App. 1 Cir. 6/5/15); 174 So. 3d 659, 665, *writ denied*, 2015-1309 (La. 10/30/15); 179 So. 3d 615. Following the enactment of the MFA, Louisiana adopted La. Rev. Stat. § 22:868, which serves to "reverse-preempt" the FAA, and "render[] void arbitration provisions in insurance contracts." *See McDonnel Grp., L.L.C. v.*

6

*Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 431 (5th Cir. 2019), *as revised* (June 6, 2019) (citations omitted). Reverse-preemption under the MFA only applies to Acts of Congress, not treaties.[2]

### B. Application of La. Rev. Stat. § 22:868

In pertinent part La. Rev. Stat. § 22:868 states that "No insurance contract delivered or issued for delivery in this state . . . shall contain any condition, stipulation, or agreement . . . [d]epriving the courts of this state of the jurisdiction or venue of action against the insurer." La. Rev. Stat. § 22:868. Accordingly, the Supreme Court of Louisiana has found that arbitration provisions in insurance contracts are unenforceable. *See Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So. 2d 1383, 1384 (La. 1982) (citation omitted). Here, ISIC argues that La. Rev. Stat. § 22:868 does not apply to surplus line insurers and that the FAA, which favors arbitration agreements, instead governs the parties' policy. *See* Rec. Doc.

---

[2] Whereas The Convention of the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), an international treaty aimed at "encourag[ing] the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries," would supersede Louisiana law, it does not apply here. *See Sherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974); *Safety Nat. Cas. Corp. v. Certain Underwriters At Lloyd's, London*, 587 F.3d 714, 724 (5th Cir. 2009). In order for the Convention to apply, the agreement to arbitrate must be written, arbitration must be in a signatory nation, the issue must arise out of a commercial legal relationship, and a non-American citizen must be a party. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (citing *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 274 (5th Cir. 2002)). Here, all parties are domestic and as such the Convention is inapplicable.

9-1 at 4-5, 7. "When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the state's highest court." *Barfield v. Madison Cnty, Miss.*, 212 F.3d 269, 271-72 (5th Cir. 2000) (citation omitted). The question of whether La. Rev. Stat. § 22:868 applies to surplus line insurers has not been ruled on by the Louisiana Supreme Court, therefore this Court "must make an 'Erie guess' and 'determine as best it can' what the Louisiana Supreme Court would decide." *See Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) (citations omitted).

According to the Supreme Court of Louisiana, "The fundamental question in all cases of statutory interpretation is legislative intent," and "That intent is ascertained through the rules of statutory interpretation." *Deal v. Perkins*, 2022-01212 (La. 8/1/22); 347 So. 3d 121, 131 (citations omitted). "[T]he starting point in the interpretation of any statute is the language of the statute itself," and "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law must be applied as written, and no further interpretation may be made in search of the legislative intent." *See id.* (first citing *M.J. Farms, Ltd. v. Exxon Mobile Corp.*, 07-2371, p. 13 (La. 7/1/08); 998 So. 2d 16, 26-27; then citing La. Civ. Code art. 9; and then citing La. Rev. Stat. § 1:4). Further, "[w]hen the language of the law is susceptible of

8

different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law," and "examining the context in which they occur and the txt of the law as a whole." *Id.* at 132 (alteration in original) (citing La. Civ. Code arts. 10, 12).

First, to the extent that defendant argues that La. Rev. Stat. § 22:868 does not apply to surplus line insurers, this Court disagrees.[3] The plain language of La. Rev. Stat. § 22:868 states that "*No insurance contract* delivered or issued for delivery in this state . . . shall contain any condition, stipulation, or agreement . . . [d]epriving the courts of this state of the jurisdiction or venue of action against the

---

[3] To the extent that plaintiffs also argue that "the Policy does not comport to surplus line requirements to begin with as the Policy at issue does not align with surplus line requirements under La. R.S. 22:433 which requires that surplus line policies include the signature of a surplus line broker or authorized representative," and therefore they object to Rec. Doc. 9-3 as a surplus line policy, this argument is rejected. *See* Rec. Doc. 11 at 3. Plaintiff's quote specifically states that "This insurance policy is delivered as a surplus line coverage under the Insurance Code of the State of Louisiana," and plaintiffs concede that "At all times material hereto, the Policy was in full force and effect and the annual premium had been paid in full." see Rec. Doc. 1 at 3; Rec. Doc. 9-2 at 12; Rec. Doc. 9-3 at 1. Plaintiffs now attempt to argue that the policy is not a surplus line policy while at the same time trying to take advantage of the policy. *See* Rec. Doc. 11 at 3. Surplus line insurers "have more freedom and flexibility for accepting risks and designing and pricing their policies," than standard insurance companies. *See* Rec. Doc. 15-1 at 2. Because "surplus line insurers are not subject to rate and policy review . . . . [they have] the flexibility needed to provide a market for unique, large or high risks." *See id.* Plaintiffs are estopped from arguing that the policy at issue is not a surplus line policy, while at the same time arguing that the surplus line policy is in full force and effect and that they are entitled to recover under said policy. *See generally Bellsouth Advertising & Pub. Corp. v. Gassenberger*, 565 So. 2d 1093, 1095 (La. 1990) (the doctrine of equitable estoppel "is based on equitable consideration of good faith and 'is designed to prevent injustice by barring a party form taking a position contrary to his prior acts, admissions, representations, or silence.'").

insurer." La. Rev. Stat. § 22:868(A) (emphasis added). The statute is unambiguous as it applies to all insurance contracts and makes no exception for certain types of insurance. Defendants focus on La. Rev. Stat. § 22:868(D) which provides that "The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance," for its argument that La. Rev. Stat. § 22:868(A) does not apply to surplus line insurers, however, this is a mischaracterization of the statutory text. *See* Rec. Doc. 9-1 at 7. Subsection A provides for a prohibition of agreements depriving state courts of jurisdiction or venue, but Subsection D provides for an exception for "a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." *See* La. Rev. Stat. § 22:868. Therefore, while it is true that surplus line insurers are excepted from the prohibitions under Subsection A regarding forum and venue selection clauses, agreements divesting jurisdiction are nonetheless still prohibited. *See id.*

Defendants then argue that the arbitration clause at issue is a forum selection clause and therefore permitted under La. Rev. Stat. § 22:868; whereas plaintiffs argue that the arbitration clause divests this Court of jurisdiction, making it unenforceable. *See* Rec. Doc. 15 at 3-7; Rec. Doc. 11 at 3-7. As

10

this is an issue of state law, this Court is bound by the interpretations of the Supreme Court of Louisiana. *See Barfield*, 212 F.3d at 271-72. Whereas plaintiffs cite to this Court's previous decision in *Cent. Claims Serv. v. Claims Prof'ls Liab. Ins. Co.*, No. 10-4672, 2011 U.S. Dist. LEXIS 99745, at *10-11 (E.D. La. Aug. 30, 2011), for our finding that "numerous cases in Louisiana and the Fifth Circuit Court of Appeals hold that arbitration does deprive the courts of jurisdiction over an action against an insurer," and Justice Watson's concurrence in *Servier v. U.S. Fidelity & Guarantee Co.*, 497 So. 2d 1380, 1385 (La. 1985), which stated, "Appraisal and arbitration clauses both have the effect of divesting jurisdiction," plaintiffs fail to cite any recent authority on the matter. *See* Rec. Doc. 11 at 4; *Cent. Claims Serv. v. Claims Prof'ls Liab. Ins. Co.*, No. 10-4672, 2011 U.S. Dist. LEXIS 99745, at *10-11 (E.D. La. Aug. 30, 2011) (Lemelle, J.); *Servier v. U.S. Fidelity & Guarantee Co.*, 497 So. 2d 1380, 1385 (La. 1985) (Watson, J., concurring). Recently in *Donelon v. Shilling*, 2019-00514 (La. 4/27/20); 340 So. 3d 786, 790 n.6, the Supreme Court of Louisiana found that "An arbitration clause has been characterized by this court as a type of venue selection clause," therefore this Court must treat the arbitration clause as a venue or forum selection clause. *See Donelon v. Shilling*, 2019-00514 (La. 4/27/20); 340 So. 3d 786, 790 n.6; *see also Viking River Cruises, Inc. v. Moriana*, 142 S.

11

Ct. 1906, 1919 (2022) ("an arbitration agreement is 'a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.'"); *Wellogix, Inc. v. SAP Am., Inc.*, 648 F. App'x 398, 401 (5th Cir. 2016) (describing arbitration clauses as "species of forum selection clause.").

To the extent that plaintiffs argue that *Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.*, 2018-0748 (La. 5/8/19); 282 So. 3d 1042, supports their contention that arbitration clauses divest the Court's jurisdiction, this argument is rejected. *See* Rec. Doc. 11 at 4-6. The issue presented in *Creekstone* was whether a forum selection clause in an insurance policy violated La. Rev. Stat. § 22:868, which read "No insurance contract delivered or issued for delivery in this . . . shall contain any condition, stipulation, or agreement . . . [d]epriving the courts of this state of the jurisdiction of action against the insurer." *See Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.*, 2018-0748 (La. 5/8/19); 282 So. 3d 1042, 1046 [hereinafter *Creekstone*]; La. Rev. Stat. § 22:868 (2019). The court found that jurisdiction and venue were "separate and distinct," and "decline[d] to extend the definition of 'jurisdiction'—which is clearly defined in the Civil Code—to include 'venue' or 'forum.'" *Id.* at 1049. The majority did not discuss La. Rev. Stat. § 22:868 in terms of arbitration clauses, and did not hold

that arbitration clauses pertained to jurisdiction or forum/venue. Whereas Justice Weimer's concurring opinion considered La. Rev. Stat. § 22:868 along with arbitration clauses, finding that arbitration clauses divest the court of jurisdiction, more recent authority suggests that the Supreme Court of Louisiana considers arbitration clauses to be a subset of forum selection clauses, and this Court is therefore bound by such interpretation. *See Creekstone*, 282 So. 3d at 1052-53 (Weimer, J., concurring); *Donelon*, 340 So. 3d at 790 n.6.

As defendant ISIC is a surplus line insurer with policies not subject to approval by the Department of Insurance, La. Rev. Stat. § 22:868(D) permits forum and venue selection clauses as excepted from La. Rev. Stat. § 22:868(A). Therefore, the Court holds that the instant arbitration clause is not precluded by La. Rev. Stat. § 22:868, and is therefore enforceable against plaintiffs as a valid agreement to arbitrate between the parties.

Finding that the first prong of the first step in determining whether the parties agreed to arbitrate this dispute has been satisfied, the Court now turns to the second prong of "whether the dispute in question falls within the scope of that arbitration agreement." *See Webb*, 89 F.3d at 258 (citations omitted). "[A]mbiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Id.* at

13

258 (citation omitted). The arbitration agreement states that "All matters in dispute between you and us (referred to in this policy as 'the parties') in relation to this Insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal . . . ." Rec. Doc. 9-1 at 2-3. In their complaint plaintiffs are seeking:

> [A]ll amounts due under the terms of the policy and for contractual, general, and special damages sustained as well as for bad faith damages for breach of Defendants' duty of good faith and fair dealing, plus mandatory and discretionary penalties and attorneys' fees . . . legal interest of pre and post judgment from the date of demand until paid, for all costs of these proceedings, all general and equitable relief allowed, as well as any other relief the Court may deem necessary, just and proper.

Rec. Doc. 1 at 9-10. Considering all ambiguities in favor of arbitration, it is clear that dispute falls within the scope of the arbitration agreement, therefore the second prong is satisfied.

The second step of the inquiry is "to determine whether legal constrains external to the parties' agreement foreclosed the arbitration of those claims." *See Webb*, 89 F.3d at 258 (citations and internal quotations omitted). Plaintiffs have not asserted that there are any external legal constraints that render the specific claim unarbitrable.

    **C. Constitutionality of Arbitration Clause Enforcement**

In their opposition to defendant's motion to compel arbitration (Rec. Doc. 11), plaintiffs make the additional argument that if the Court finds that defendant has a right to arbitrate, "Plaintiffs maintain that they never waived their right of access to the courts as guaranteed by the Louisiana Constitution." *See* Rec. Doc. 11 at 7-8. In their complaint, plaintiffs state that "At all times material hereto, the Policy was in full force and effect and the annual premium had been paid in full," and further identified the policy as Policy No. 2021-900053-01. *See* Rec. Doc. 1 at 2-3. That specific policy as provided by defendants incorporates SMB 300 2010 CW All Commercial Property, which contains the contested arbitration clause. *See* Rec. Doc. 9-2 at 13; Rec. Doc. 9-3 at 37-38. Plaintiffs now seemingly argue that while the policy is in full effect, the arbitration agreement within the policy is not enforceable under the Louisiana Constitution. *See* Rec. Doc. 11 at 7-8. Plaintiffs do not argue that the policy as a whole is invalid, or that the policy defendant provided at Rec. Doc. 9-3 is incorrect, simply that this Court should not enforce the arbitration agreement within the policy because defendant did not produce a signed copy of the agreement. The plaintiffs are arguing that while they should reap the benefits of the insurance policy, the Court should hold that they did not agree to arbitration, despite agreeing to the other terms of coverage.

15

Whereas plaintiffs cite generally to Article I, Section 22 of the Louisiana Constitution, the Federal Arbitration Act governs this issue. As previously stated, the FAA establishes a "liberal policy favoring arbitration" and a "strong federal policy in favor of enforcing arbitration agreements." *Texaco Exploration & Prod. Co*, 243 F.3d at 909. Considering the liberal construction of the FAA, this Court finds plaintiffs' argument that enforcing the arbitration provision unconstitutional under the Louisiana Constitution unpersuasive. For the foregoing reasons, this Court finds that the motion to compel arbitration must be **GRANTED**.

New Orleans, Louisiana this 8th day of August 2023

_____
SENIOR UNITED STATES DISTRICT JUDGE